IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 03-cv-1411-PSF-MJW

CYNTHIA A. APA,

     Plaintiffs,

v.

QWEST CORPORATION,

     Defendants.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

     This employment matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 34), filed September 13, 2004.  The motion was accompanied by a brief in support of the motion (collectively "Defendant's Motion") together with Exhibits numbered A-1 through A-11.  On October 19, 2004, Plaintiff Cynthia Apa filed her response to the defendant's motion ("Plaintiff's Response") together with Exhibits A through I.  On November 3, 2004, defendant filed a reply brief in support of its motion ("Defendant's Reply") together with Exhibits A-12 through A-17.

     A jury trial on this matter was set to commence on April 4, 2005.  Upon the joint motion of the parties, the trial was vacated on March 10, 2005 pending the disposition of defendant's motion for summary judgment.  The matter is now ripe for determination.

**PLAINTIFF'S COMPLAINT**

In her Amended Complaint filed on September 17, 2003, Plaintiff Apa alleged

five claims for relief against her employer, Defendant Qwest Corporation, asserting

various types of employment discrimination.  In her First Claim for Relief she alleges

disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42

U.S.C. § 12101, *et seq.*  In her Second Claim for Relief she alleges unlawful retaliatory

treatment in violation of the ADA and Title VII, 42 U.S.C. § 2000e, *et seq.,* after filing a

charge of discrimination in August 2002.  In her Third Claim for Relief she alleges

discriminatory treatment due to her race, national origin and gender, as well as a

sexually hostile  work environment, in violation of Title VII.  In her Fourth Claim for

Relief she alleges age discrimination in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  In her Fifth Claim for Relief she

alleges discrimination due to her race, gender, national origin, disability and age, as well

as a hostile work environment and retaliation in violation of the Colorado Anti-

Discrimination Act, C.R.S. § 24-34-401, *et seq.*

**FACTUAL BACKGROUND**

It is not disputed that plaintiff is a Caucasian female of Italian-American descent,

born on November 12, 1956 (Pretrial Order dated November 23, 2004 at 9, ¶ 6).  She

has been employed by Qwest since February 9, 1979 (*Id.* ¶ 5).  Since 1999, when she

alleges the discrimination against her first occurred, she has held two positions with

Qwest.  From February 1999 until approximately March 23, 2001, she worked as a

Service Assurance Technician ("SAT") in Qwest's Local Number Portability Group.

During this period her direct supervisor was Melanie Durocher (Durocher deposition, Exhibit A-5 to Defendant's Motion at 21).  On March 23, 2001, Plaintiff was transferred out of the SAT position to a position as a Central Office Technician ("COT")  (Exhibit A-4 to Defendant's Motion at page marked "Pl 00791").  From June 2001 through at least the date she filed her complaint, she worked as a COT under the supervision of John Purcell (Purcell deposition, Exhibit A-6 to Defendant's Motion at 20).

On August 9, 2002, plaintiff filed a discrimination charge with the EEOC asserting, by checking the available boxes on the form, discrimination based on race, sex, national origin, age, disability and retaliation (See Exhibit H to Plaintiff's Response at 1). She also appears to have asserted that the discrimination took place from "98-present" and by checking a box indicated that the discrimination was "continuing." In a narrative attachment to the discrimination form plaintiff states she is a "disabled Italian Female, over 40" and asserts that:

> I have been subjected to a hostile work environment and discrimination based upon my age, sex and disability.  I have repeatedly complained about the discrimination inflicted upon me.  These complaints have only resulted in retaliation.
>
> I have been continually treated disparately and less favorably than non Italian and/or younger and/or non disabled and/or male employees with respect to working conditions, assignments, shifts, discipline training and job opportunities.

(*Id.* at 2).

On March 27, 2003, plaintiff filed another discrimination charge with the EEOC asserting, by checking the available boxes on the form, discrimination based on race,

sex, national origin, age, disability and retaliation (*id.* at 4).  She again appears to assert that the discrimination took place from "1998-present" and by checking a box indicated that the discrimination was "continuing."  In a 3-page narrative statement attached to the discrimination form plaintiff essentially describes a series of events that occurred in January 2003, and concludes by stating that "Mr. Purcell discriminatorily denied [me] overtime in retaliation for filing an EEO charge."  (*Id.* at 6).  Plaintiff also recites that after she filed a discrimination charge in or around September 2002 she was denied short-term disability benefits and that in November 2002 she was not timely paid by the employer, an omission that was not corrected until January 2003.  In her conclusion, plaintiff summarizes the events which she describes as retaliation against her for filing her EEOC charge (*id.* at 7).

The parties have stipulated that the EEOC issued a notice of right to sue on plaintiff's first discrimination charge on April 30, 2003 and on her second charge on July 31, 2003 (Pretrial Order at 9, ¶¶ 10, 11).  Plaintiff timely filed her original complaint on July 29, 2003.  Her Amended Complaint was filed on September 17, 2003 stating the five claims for relief described above.

**DEFENDANT'S MOTION**

Defendant moves this Court to grant summary judgment in its favor on all five claims for relief.  The purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words, there "must be evidence on which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516

U.S. 1160 (1996).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  F.R.Civ.P. 56(c).  When applying this standard, a court must view the factual record in the light most favorable to the non-movant.  *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As Defendant's motion sets forth various grounds as to the various claims asserted by plaintiff, this Order separately addresses the defendant's arguments.

1.   Whether Plaintiff Timely Filed Her Charge Of Discrimination

Defendant first argues that plaintiff's claims for gender, national origin, age and disability discrimination, as they appear in the First, Third and Fourth Claims for Relief, are barred because plaintiff did not timely file a discrimination charge within 300 days of the allegedly discriminatory actions, as required by 42 U.S.C. § 2000e-5(e), 29 U.S.C. § 626(d) and 42 U.S.C. § 12117.[1]  (Defendant's Motion at 20.)

Defendant is correct that discrete acts of employment discrimination such as termination, failure to promote, denial of transfer, or refusal to hire, must have occurred within 300 days of the filing of an EEOC charge in order to be actionable.  *See National*

---

[1]  42 U.S.C. § 12117 provides that the same procedures found in Title VII, including those of 42 U.S.C. 2000e-5, apply to disability discrimination claims.  In *McBride v. CITGO Petroleum*, 281 F.3d 1099, 1105 (10th Cir. 2002), the Court expressly held that exhaustion of administrative remedies under the Americans with Disabilities Act, 42 U.S.C. § 12101 to § 12213, is a jurisdictional prerequisite to suit in the Tenth Circuit.

*Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 114-115 (2002).  In addition, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" and a plaintiff can only bring suit on such discrete acts if they are the subject of a timely filed charge (*id.* at 114).  Certainly, any discrete acts of alleged employment discrimination that occurred more than 300 days before plaintiff filed her discrimination charge on August 9, 2002 cannot be the basis for a finding of liability on the part of defendant in this case.

However, the only specific act that plaintiff identified by date in her August 2002 discrimination charge appears to be an event in April 2001 when she claims she was "constructively transferred" out of her position as SAT.  That event occurred more than 300 days before the filing of her August 2002 charge and cannot be a basis for a finding of liability against the defendant.

In *National Railroad Passenger Corp., supra,* Court also held that when the plaintiff is claiming discrimination based on a hostile work environment, which is generally composed of a series of component acts that collectively constitute one unlawful employment practice, it does not matter that some of the contributing acts of the hostile work environment fall outside the statutory time period. 536 U.S. at 117. Nonetheless, the court still held that some act contributing to the claim must occur within the filing period in order for the entire time period of the hostile environment to be considered for the purposes of determining liability.  *Id.*

Plaintiff's wide-ranging charge of August 2002 does not specify any other dates on which the various alleged acts of discrimination occurred.  Defendant contends that

6

the discriminatory practices described in plaintiff's discrimination charge filed in August 2002 are the same practices which she complained about in an "internal complaint" filed with the company in April 2000.  Since plaintiff complained of the discriminatory practices as early as April 2000, they must have occurred more than 300 days before the filing of the August 2002 charge, argues defendant.

This may be so, but there is no way for the Court to make this determination solely from Defendant's Brief.  While defendants cite to plaintiff's deposition testimony in which she admits filing an internal discrimination charge in April 2000 "claiming age, gender disability discrimination and retaliation" (Apa deposition, Exhibit A-1 to Defendant's Motion at 366[2]) that testimony does not specify the acts that gave rise to the claim of discrimination, and defendant has not supplied a copy of the "internal complaint" plaintiff is said to have filed in April 2000.

However, the discovery record in the case does provide some details regarding plaintiff's various claims of employment discrimination.

      a.   <u>National origin discrimination</u>

First, with respect to plaintiff's claim of national origin discrimination, the record shows that the only events that she identifies as supporting her claim of discrimination based on her national origin occurred during a brief period of time in November 2000. On or about November 8, 2000, plaintiff sent an e-mail to her supervisor, Ms. Durocher,

---

[2] Exhibit A-1 to Defendant's Motion contains excerpts from deposition transcripts from two depositions taken of plaintiff, one on April 2, 2004 and one on August 11, 2004.  However, because the pages of the two transcripts are numbered consecutively, the page citations in this Order to Exhibit A-1 do not differentiate due to the date of the deposition.

apparently complaining about incidents where she heard the use of a term she considered to be derogatory of Italian-Americans.  Although Defendant's Motion cites to a page "PL 1242" as a copy of this e-mail, (*see* Defendant's Motion at 18, ¶ 155) supposedly contained in the packet of documents labeled as Exhibit A-4 to the motion, the Court has not been able to locate such a bates-numbered document in Exhibit A-4. Nonetheless, the record does show that on November 10, 2000, plaintiff met with Ms. Durocher and a representative from the company union to discuss these incidents (Exhibit A-4, page "PL 2676-77").  Plaintiff testified that after that meeting, the use of such derogatory language stopped (Apa deposition, Exhibit A-1 at 88).  Plaintiff does not provide any evidence, by way of an affidavit or other deposition testimony, nor does the record otherwise indicate, that the ethnic slurs continued after November 2000.  Accordingly, to the extent the charge filed in August 2002 complains of these events as national origin discrimination, it was filed more than 300 days after the discriminatory act complained of, and therefore is untimely .

Moreover, although the national origin box is checked on plaintiff's second EEOC charge filed in March 2003, the substance of the charge states nothing to support a claim of national origin discrimination.  To the extent the Third Claim for Relief seeks to assert claims for discrimination based on plaintiff's national origin, they are dismissed.

b.    Age-based discrimination

Plaintiff's August 2002 discrimination charge likewise provides no dates for the alleged events of age-based discrimination, stating only that plaintiff was treated less favorably than younger employees (Exhibit H to Plaintiff's Response).  Plaintiff's

Amended Complaint provides no dates or time references for her allegation that she

was "discriminated on the basis of her age, as alleged herein." (Amended Complaint at

¶ 48).  The other allegations in the Complaint provide no dates or time references for

her allegation that "employees under the age of forty were treated more favorably than

Plaintiff" (Amended Complaint at ¶ 16) other than the fact that any such action taken

by Ms. Durocher must have occurred prior to March 2001 while she was plaintiff's

supervisor.  Such date is well outside the 300 day period preceding plaintiff's August

2002 EEOC charge.  Finally, in the face of Defendant's argument that any age-based

discrimination alleged by plaintiff occurred more than 300 days prior to the August 2002

charge, plaintiff provided no affidavit, documentation or even argument in her response

to show that such acts occurred within the timely filing period.

    As a Tenth Circuit panel stated in *Gross v. Burggraf Construction Co.*, 53 F.3d

1531 (10th Cir 1995), when affirming a grant of summary judgment in the face of

unsupported allegations of gender-based discrimination:

> Sufficient evidence (pertinent to the material issue) must be
> identified by reference to an affidavit, a deposition transcript
> or a specific exhibit incorporated therein.  Without a specific
> reference, we will not search the record in an effort to
> determine whether there exists dormant evidence which
> might require submission of the case to a jury.  Judges
> are not like pigs, hunting for truffles buried in briefs.

53 F.3d at 1546 (internal quotations and citations omitted).

    Here, the Court nonetheless has searched the record on a truffle expedition

but has found none that demonstrates that plaintiff timely filed a charge with the EEOC

regarding her allegations of age-based discrimination.  Accordingly, summary judgment must be entered on plaintiff's ADEA claim as pled in her Fourth Claim for Relief.

> ### c.   Gender-based discrimination

Similarly, the August 2002 charge does not specify the dates of alleged gender-based discrimination, stating only that plaintiff was treated less favorably than male employees (Exhibit H to Plaintiff's Response).  In the Third Claim for Relief the Amended Complaint alleges only that plaintiff has been discriminated against and harassed as alleged herein (Amended Complaint at 44).  Nowhere in the discovery record, or in her Response to the defendant's motion, does plaintiff provide any specific admissible evidence indicating that the disparate treatment she alleges based on gender occurred within 300 days of her August 2002 charge.  Accordingly, summary judgment will enter for defendant on plaintiff's gender-based discrimination claims to the extent they allege disparate treatment.

By contrast, other allegations in the Amended Complaint and testimony in the discovery record do reflect that plaintiff's charge of gender-based discrimination in the form of sexual harassment is based, at least in part, on claims that she was subjected to a hostile work environment due to her gender (Amended Complaint at ¶¶ 24, 25).  At least one of the events which plaintiff claims gives rise to the hostile work environment appears to relate to acts taken by fellow employee Thomas Pomeleo in June 2002, or within the 300 days preceding the August 2002 charge (Defendant's Motion at 15, ¶ 127; Apa deposition, Exhibit A-1 at 38-39).  Accordingly, the Court will

not dismiss the charge of gender-based discrimination to the extent it alleges sexual harassment solely on the ground that the charge was untimely filed.

                d.      <u>Disability discrimination</u>

While the August 2002 charge does state that plaintiff suffered a "disabling" back injury on the job in June 1999, and that she has been denied the "opportunity to work at home" which the Court interprets as an assertion that she was denied what she would claim to be a "reasonable accommodation," the charge does not otherwise specify the dates of alleged disability discrimination.  The Amended Complaint states more generally that plaintiff requested various forms of "reasonable accommodations" due to her disability, and that such requests were denied by defendant, but again does not specify when this occurred (Amended Complaint at ¶ 11).

However, the discovery record does reflect the details of plaintiff's requests for reasonable accommodations, the timing of those requests, as well as the defendant's response to those demands.  Since plaintiff's charge of discrimination was filed on August 9, 2002, the only events of disability discrimination by way of denying reasonable accommodation that are timely covered by the charge are those which occurred within 300 days preceding the charge, or after October 12, 2001.  The Court's review of the discovery record reveals that plaintiff's alleged acts of disability discrimination by way of the denial of reasonable accommodation all occurred before October 12, 2001, and therefore were not the subject of a timely filed charge.  Thus, those alleged acts are barred and plaintiff's claims under the ADA, to the extent it alleges denial of reasonable accommodations must be dismissed.

While plaintiff's testimony is vague as to the timing of her demands for reasonable accommodation, it appears that most if not all of them arose while plaintiff was working as a SAT under the supervision of Ms. Durocher, and it is to Ms. Durocher whom plaintiff points as the employer representative who was allegedly insensitive to her needs.  Because plaintiff worked under Ms. Durocher's supervision only through March 2001, the requests for reasonable accommodation necessarily occurred before October 2001, and therefore more than 300 days prior to the August 9, 2002 EEOC charge.

For example, plaintiff alleges, as indicated in her charge, that as a result of her back injury she requested a reasonable accommodation to be permitted to work from home (Amended Complaint at ¶ 11).  Plaintiff testified that she sought this accommo-dation while employed as an SAT, but once she became a COT in March 2001 she was no longer interested in working from home (Apa Deposition, Exhibit A-1 at 286-87).  Accordingly, any request for a reasonable accommodation of being permitted to work at home, and any denial of such request, necessarily occurred more than 300 days before plaintiff filed her EEOC charge.

Plaintiff also alleged and testified that she requested a handicapped parking space or a special parking arrangement requiring access to a particular elevator so should could more easily access her car, a handicapped access button for the door to the ladies' room, and a card allowing her special access to the building (Amended Complaint at ¶ 11; *see also* notes of telephone call dated February 18, 2000, page DP 3233; notes of telephone call dated July 24, 2000, page DP 03212; and e-mail

from plaintiff dated February 19, 2001, p. 3203–documents contained in Exhibit A-2 to Defendant's Motion).  While plaintiff disputes whether her requests were adequately considered by the employer, a review of the exhibits and plaintiff's testimony indicates that such discussions occurred while she was under Ms. Durocher's supervision, and in any event prior to October 12, 2001.  *See* Statement of Facts in Defendant's Motion at 11-13.  Again, plaintiff has made no showing that any of these requests for accommodation were made or denied within 300 days of her filing of her EEOC charge.

While under Ms. Durocher's supervision plaintiff requested an ergonomic chair to accommodate her alleged disability.  *See* e-mail dated February 4, 2000, page DP 3240 in Exhibit A-2 to Defendant's Motion.  Plaintiff apparently received the chair no later than June 23, 2000, when she sent an e-mail acknowledging receipt of the chair.  *See* e-mail dated June 23, 2000, page DP 00027 in Exhibit A-3 to Defendant's Motion.  Although plaintiff may have been dissatisfied with the chair, or the timing of its delivery, nonetheless the lengthy summary of facts regarding this request as set forth in Defendant's Motion, the dates of which are not disputed by plaintiff in her response, demonstrate that this exchange occurred in 2000 or the first part of 2001, but in any event more than 300 days before the filing of the EEOC charge.

After her transfer to the COT position, plaintiff requested Mr. Purcell to provide her with a "raisable" work station.  *See* e-mail dated June 13, 2001, page PL 00526 in Exhibit A-4 to Defendant's Motion.  Efforts to obtain the workstation for plaintiff commenced shortly thereafter.  *See* e-mail dated June 14, 2001, page PL 00527 in Exhibit A-4 to Defendant's Motion.  Plaintiff received the work station no later than

October 29, 2001.  *See* e-mail dated October 29, 2001 from plaintiff to Purcell thanking

him for the workstation, page PL 00530 in Exhibit A-4 to Defendant's Motion.  Even if

the work station was delivered within the 300 day period preceding plaintiff's charge,

there is no indication that she suffered a denial of a reasonable accommodation

in connection with her request, or that any such denial was anything more than a

*de minimis* delay.  Again, without reaching the issue of whether or not plaintiff's request

constituted a reasonable accommodation, the events relating to this incident occurred

more than 300 days before the filing of the EEOC charge.

Since plaintiff's requests for reasonable accommodations from the employer all

occurred and were responded to, either positively or negatively, more than 300 days

prior to her filing her charge with the EEOC on August 9, 2002, her claims in the

Amended Complaint asserting failure to provide reasonable accommodation are

dismissed as untimely.

2.   Whether Plaintiff Has Established A *Prima Facie* Case Of Race Or
     Gender-Based Discrimination

Defendant argues that even if plaintiff timely filed her charges of race and

gender-based discrimination, she has failed to make out a *prima facie* case of such

discrimination (Defendant's Motion at 27-28).

a.   Race discrimination

In order to make out a *prima facie* case of race discrimination, a plaintiff must

first show that he or she is a member of a protected class.   *Exum v. U.S. Olympic*

*Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004).  Here, it has been stipulated that

plaintiff is a Caucasian and thus is not a member of a racial minority or protected class.

Since plaintiff here is claiming "reverse discrimination," she must identify background

circumstances that would justify applying the same presumption of discrimination

afforded to a minority plaintiff to a majority plaintiff.  *Reynolds v. School Dist. No. 1,*

*Denver Colo.*,  69 F.3d 1523, 1534 (10th Cir. 1995).  To make that showing, plaintiff

must show that the defendant is one of those unusual employers who discriminate

against the majority.  (*Id.*)

Plaintiff's Amended Complaint asserts that she was discriminated on the basis

of her race (Amended Complaint at ¶¶ 13, 44, 52), but at no place does it provide the

"background circumstances" required to demonstrate that defendant is one of those

unusual employers who discriminates against the majority.  Moreover, in her Response

plaintiff makes no showing, by way of affidavit or exhibit, to support her assertion that

defendant discriminated against her because of her race.  Plaintiff has not established a

*prima facie* case of race discrimination and to the extent the Third Claim for Relief

seeks to assert claims for discrimination based on plaintiff's race, it is  dismissed.

> b.    Gender-based discrimination

Although the Court has dismissed plaintiff's claims of gender-based disparate

treatment in violation of Title VII, plaintiff also complains that she has been the victim

of gender-based discrimination through the creation of a sexually hostile work

environment due to the actions of fellow employee Tomas Pomeleo and the inaction

of defendant to address such conduct (Amended Complaint ¶¶ 24-25; 44).  In her

deposition, plaintiff further testified that she felt harassed and intimidated due to other

actions and remarks of Mr. Pomeleo regarding women, regarding her being a woman

and regarding her breasts, as well as conduct of fellow employee Dan Myers who she

accused of staring at her breasts (Apa Deposition, Exhibit A-1 at 114, 136-37).  In

*Meritor Savings Bank, FSB, v. Vinson*, 477 U.S. 57, 66 (1986), the Supreme Court held

that a plaintiff may establish a violation of Title VII by proving that discrimination based

on sex has created a hostile or abusive work environment.  Plaintiff has established a

*prima facie* case of sexual harassment under Title VII.

3.   Whether Plaintiff's Claim Of Gender-Based Discrimination Is Subject To
     Summary Judgment

Defendant asserts that even if plaintiff has established a *prima facie* case of

gender-based discrimination, she has failed to demonstrate the presence of disputed

issues of material fact that would entitle her to relief on such claims.  Defendant

separately addresses plaintiff's allegations that defendant permitted the creation of

a sexually hostile work environment, and seeks summary judgment on that claim

(Defendant's Motion at 30-32).

In *Meritor, supra*, the Supreme Court defined actionable sexual harassment,

referencing the existing EEOC guidelines, and stating:

> In defining "sexual harassment," the Guidelines first
> describe the kinds of workplace conduct that may be
> actionable under Title VII.  These include "[u]nwelcome
> sexual advances, requests for sexual favors, and other
> verbal or physical conduct of a sexual nature." 29 CFR
> § 1604.11(a) (1985).  Relevant to the charges at issue
> in this case, the Guidelines provide that such sexual
> misconduct constitutes prohibited "sexual harassment,"
> whether or not it is directly linked to the grant or denial
> of an economic *quid pro quo*, where "such conduct has

16

> the purpose or effect of unreasonably interfering with an
> individual's work performance or creating an intimidating,
> hostile, or offensive working environment." § 1604.11(a)(3).

477 U.S. at 65.

The Supreme Court held that for sexual harassment to be actionable it must be sufficiently severe or pervasive so that it alters the conditions of the victim's employment and creates an abusive working environment. *Id.* at 67. The existence of sexual harassment is determined by looking to "the record as a whole and the totality of circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." *Id.* at 69 (internal quotations omitted), citing to 29 C.F.R. § 1604.11(b)(1985).

In *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998), *cert. denied,* 526 U.S. 1039 (1999), the Court held that the plaintiff must provide evidence that she was the object of harassment because of her gender, but further held that conduct that is overtly sexual is presumed to be because of the victim's gender. The court noted that "actionable conduct is not limited to behavior motivated sexual desire." *Id.* In *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093 (10th Cir. 1999), the court stated that "[h]arassment alleged to be because of sex need not be explicitly sexual in nature." 185 F.3d at 1097.

The severity or pervasiveness of the conduct must be judged from both an objective and a subjective perspective. *Id.,* at 1098 quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). That is, the environment must be one that both a

reasonable person would find hostile and abusive, and one that the victim did perceive to be so.  *Id.*

Here, defendant argues that the conduct alleged by plaintiff does not rise to the levels of serious or pervasiveness required under the above legal framework (Defendant's Motion at 30-32).  The defendant's motion summarizes what it claims are the several incidents of sexual harassment alleged by plaintiff, and asserts that they are not necessarily based on plaintiff's gender, nor are they sufficiently severe to create a sexually hostile environment.

The Court does not agree with defendant on these arguments.  Certainly some of the statements and conduct alleged to have been made and taken by plaintiff's co-workers Pomeleo and Myers were based on plaintiff's gender.  The allegations as to statements and conduct relating to plaintiff's breasts alone are sufficient evidence on this point.  Moreover, as the Tenth Circuit also noted in *O'Shea, supra*, the severity or pervasiveness of the conduct in question is generally unsuited for summary judgment because it is "quintessentially" a question of fact.  *Id.* at 1098

However, even assuming the alleged workplace conduct creates an environment that would be found to be hostile and abusive due to sexual harassment, whether the employer is liable under Title VII is a separate question.  In *Meritor*, *supra*, the Supreme Court declined to issue "a definitive rule on employer liability," but did state that it agreed with the EEOC  "that Congress wanted Courts to look to agency principles for guidance in this area."  477 U.S. at 72.  Pointing out that the definition of "employer" in Title VII included any "agent" of an employer, the Court observed that the statute

18

"evinces an intent to place some limits on the acts of employees for which employers under Title VII are to be held responsible." *Id.* But the Supreme Court rejected the ruling entered by the appellate court in that case that "employers are always automatically liable for sexual harassment by their supervisors." *Id.*

In *Hirschfeld v. New Mexico Corrections Department*, 916 F.2d 572 (10th Cir. 1990), the Tenth Circuit addressed the standard for employer liability in a case in which an employee complained of sexual harassment by a fellow employee. The Court described the two types of sexual harassment cases that Title VII prohibits: *quid pro quo* sexual harassment, which involves conditioning tangible employment benefits on submission to sexual demands, and hostile work environment, which as described above involves conduct which has the effect of creating an intimidating, hostile or offensive working environment. 916 F.2d at 575. The court defined employer negligence in the context of hostile work environment sexual harassment as "'failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known." 916 F.2d at 577, quoting from *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir. 1989). In *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998), this basis for liability was described as follows:

> "Under this theory of employer liability, the plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment." *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1444 (10th Cir.) . . . . This is not derivative liability according to the doctrine of *respondeat superior*, but direct liability for negligence. *See*

19

> *Hirschfeld,* 916 F.2d at 577 n. 5.  Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's remedial and preventative responses to any actually or constructively known harassment.

144 F.3d at 673.  Accordingly, this Court applies the two-part inquiry set forth in *Adler.*

Defendant asserts that the only act of alleged harassment reported to it was the incident in which Pomeleo allegedly hit plaintiff with a rolled up newspaper (Defendant's Motion at 32).  Plaintiff does not expressly dispute this assertion.  Her deposition testimony concedes that she did not report what she considered to be the harassing conduct of Mr. Myers to anybody in management (Apa Deposition, Exhibit A-1 at 136).  Nor did she report what she considered to be other harassing conduct of Mr. Pomeleo to her manager (Apa Deposition, Exhibit A-1 at 115, 123-25).  Plaintiff's response does not argue, nor cite to any evidence to show, that the defendant had actual or constructive knowledge of Pomeleo's or Myer's allegedly harassing conduct, or any tendency to harass, based on a report from any other employee.  Because the plaintiff did not report her complaints regarding these incidents to defendant's management, there is insufficient evidence that it had either actual or constructive knowledge of the alleged harassment, and accordingly it cannot be found liable because it "knew or should have known" of the alleged sexually harassing conduct of fellow workers. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 759 (1998).

With respect to the incident where Pomeleo is alleged to have struck plaintiff with a rolled up newspaper, it appears that plaintiff apparently did not report the incident because she did not want Pomeleo to be fired (Apa Deposition, Exhibit A-1 at 43-44), but a co-worker did report the matter and management learned of the incident (*id.* at 41).  Plaintiff's supervisor, John Purcell discussed the matter with his supervisor, Edna Haliburton, and a decision was made to separate plaintiff and Pomeleo so that they would not be working the same shifts (Purcell Deposition, Exhibit A-6 at 106-08). Plaintiff does not deny that she was separated from Pomeleo, nor does she assert that there were any further incidents of harassment after they were separated.

A court may determine on summary judgment whether an employer's responses to claims of sexual harassment were reasonable as a matter of law.  *Scarberry v. Exxonmobil Oil Corporation,* 328 F.3d 1255, 1257 (10th Cir. 2003).  *Adler, supra,* directs consideration of whether the employer's response was proportional to the seriousness and frequency of the alleged harassment.  144 F.3d at 676.  Among the potentially reasonable employer responses identified in *Adler* are scheduling changes and transfers, oral and written warnings to refrain from harassing conduct, reprimands and warnings that future conduct could lead to progressive discipline, including suspension and termination.  *Id.*  Here, where the employer took action to make scheduling adjustments that kept plaintiff and Pomeleo separated, and it appears that the measure was effective, this Court cannot say that the employer can be held liable for sexual harassment in violation of Title VII.  Accordingly, summary judgment must enter for

defendant on plaintiff's Third Claim for Relief to the extent it alleges gender-based discrimination in the form of a sexually hostile work environment.

     4.     Whether Plaintiff's Claims Of Retaliation Are Subject To Summary Judgment

Plaintiff generally alleges in her Second Claim for Relief that after she began complaining to her supervisors, and after she filed her discrimination charge in August 2002, defendant began to retaliate against her for making claims of discrimination (Amended Complaint ¶¶ 39-40).  Each of the statutes under which plaintiff asserts her substantive discrimination claims prohibits an employer from retaliating against an employee who engages in protected activity under that statute. *See* 42 U.S.C. 2000e-3(a), 29 U.S.C. § 623(d),[3] and 42 U.S.C. § 12203(a).

Defendant asserts that plaintiff's claims for retaliation are subject to summary judgment because she has not established a necessary element of a *prima facie* case of retaliation, namely that she suffered an "adverse action" (Defendant's Motion at 28-29), and even if she has established a *prima facie* case, her claims still fail as a matter of law because she was not subject to "adverse action" after exercising her statutory rights.  However, as the Court has already found above, the discrimination by means of an "adverse action" prohibited by these statutes includes more than just discharge, demotion or formal discipline.

---

[3]  Although plaintiff did not expressly cite the age discrimination statute in her Second Claim for Relief, the Court is assuming she intended to claim retaliatory conduct for filing her claim of age discrimination, as well.

Here, plaintiff specifically alleges various ways in which Ms. Durocher retaliated against her (Amended Complaint ¶ 15).  She alleges conduct by Mr. Purcell which she claims was retaliatory (Amended Complaint ¶¶ 18-22).  The plaintiff has stated a *prima facie* case of retaliation and defendant has not demonstrated an absence of disputed material facts that would warrant the entry of summary judgment on plaintiff's retaliation claims.

5.    Whether Plaintiff's Remaining Claims Of Disability Discrimination Are Subject To Summary Judgment

Plaintiff's First Claim for Relief alleges discrimination in violation of the ADA, but does not expressly describe the alleged discrimination other than to state that there was a denial of reasonable accommodations resulting in plaintiff being deprived of economic benefits (Amended Complaint at ¶¶ 31-36).  As the Court has indicated, to the extent plaintiff claims that defendant denied her requests for the reasonable accommodations, such claims are barred as untimely.

However, elsewhere in the Amended Complaint, plaintiff asserts that after she was released by her doctors in January 2003 to perform full time work, her supervisor Mr. Purcell "attempted to impose unilateral and artificial work restrictions" on her, wrongfully denied her overtime work, and generally did not treat her as favorably as other "non-disabled" employees. (Amended Complaint ¶¶ 18-23).  It is unclear whether plaintiff asserts these actions as part of her claim of unlawful retaliation under the ADA, or as substantive claims of disability discrimination.  However, since these matters are also referenced in the EEOC charge filed by plaintiff on March 27, 2003, Exhibit H to

Plaintiff's Response, and since plaintiff indicated in that charge that she was asserting disability discrimination as well as retaliation, the Court treats these claims as substantive allegations of discrimination in violation of the ADA.

Defendant argues that plaintiff's claims under the ADA are subject to summary judgment because (1) plaintiff is not disabled within the meaning of the ADA (Defendant's Motion at 21-23), (2) because plaintiff is not regarded as disabled (Defendant's Motion at 24), and (3) she fails to establish a *prima facie* case under the ADA because she has suffered no "adverse employment action" such as a firing, failure to be promoted, reassignment to a job with different responsibilities or decision causing a significant change in benefits (Defendant's Motion at 25).

Defendant's third argument is easily disposed of.  As the Tenth Circuit stated in *Anderson v. Coors*, 181 F.3d 1171, 1178 (10th Cir. 1999), this circuit liberally defines the phrase "adverse employment action" in the context of the ADA and has not defined a set rule regarding what constitutes an "adverse employment action."  Instead, it takes a case-by-case approach in determining whether a given employment action is "adverse." *Id.*  If plaintiff was denied overtime, or subject to artificial work restrictions, or otherwise treated in a discriminatory manner because of her disability, she may well have incurred an adverse employment action.

Defendant's second argument is also easily resolved, for in her response to Defendant's Motion plaintiff does not assert only that her claim under the ADA is based upon defendant regarding her as disabled, but rather on the fact that she is actually

disabled and has suffered alleged employment discrimination due to her disability (Plaintiff's Response at 2-3).

Defendant asserts that plaintiff is not disabled because her condition was temporary or because she is not "substantially limited in walking, caring for herself or working." (Defendant's Motion at 21-23). On the other hand, plaintiff has testified that her condition substantially limits her major life activities of walking and sleeping (Apa Deposition, Exhibit A-1 at 184-87). Moreover, whether a plaintiff is disabled is generally a question of fact. *See e.g. Selenke v. Medical Imaging of Colorado,* 248 F.3d 1249, 1258-59 (10th Cir. 2001). This factual dispute cannot be resolved by this Court on a motion for summary judgment.

Accordingly, Defendant's Motion for Summary Judgment as to the First Claim for Relief alleging violation of the ADA cannot be granted to the extent plaintiff is alleging that she was discriminated on the basis of disability in the terms, conditions or privileges of employment.

6.   Whether Plaintiff's Claim Of Hostile Work Environment Based On Disability Is Subject To Summary Judgment.

Defendant also recognizes that plaintiff argues that she was subject to a hostile work environment due to her disability, either as pled in her First Claim for Relief or elsewhere in the Amended Complaint (Defendant's Brief at 30). The Court does not find that plaintiff specifies in the First Claim for Relief the actions which she asserts constitute harassment rising to the level of a hostile work environment. Elsewhere in her Amended Complaint, however, plaintiff generally alleges that she was subject to

harassment because of her disability (Amended Complaint at ¶ 13), and she specifically identifies the acts of alleged harassment carried out by her supervisor, Ms. Durocher and another person (Amended Complaint at ¶ 15).

Whether a cause of action exists under the ADA against an employer for the creation of a hostile work environment based on a disability is an unresolved question in the Tenth Circuit.  In *Anthony v. City of Clifton*, 1999 WL 390927 (10th Cir., June 15, 1999), the court assumed such a cause of action for purposes of reviewing an order granting the defendant's motion for summary judgment.  *Id.* at **3.  The court stated that it would assume that if such a cause of action existed, the elements would be similar to those required for a sexual harassment case under Title VII.  *Id.*  Those elements require a showing by plaintiff such that a rational jury could find that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Id.*  The plaintiff must also show that she was the object of discrimination because of her perceived disability.  *Id.*

As noted, plaintiff alleges in her Amended Complaint seven separate acts of alleged harassment taken by her supervisor, Ms. Durocher, and one taken by defendant's occupational therapist Ms. Pine (Amended Complaint at ¶ 15(a)-(i)).  While several of these events appear to relate to plaintiff's request for what she claims were reasonable accommodations, the Court understands that the allegations here are not complaining of a denial of such accommodations but rather are seeking to allege that

Ms. Durocher's and Ms. Pine's statements created a hostile work environment because of plaintiff's disability.

Considering each of plaintiff's allegations, and applying the standards set forth above by the Tenth Circuit, the Court cannot find that the conduct was so severe and pervasive that a reasonable jury could find that they created a hostile environment based on plaintiff's disability.  The allegations primarily relate to conduct by Ms. Durocher that plaintiff perceives as being dismissive, demeaning, caustic, rude, shrill, hostile and overly scrutinizing.  Plaintiff's characterization of Ms. Pine's conduct does not even use such terminology.  Thus while plaintiff's supervisor may have treated her in a way that plaintiff finds offensive, that alone does not make out a hostile work environment claim. As the court said in *Anthony, supra*, the conduct must be objectively hostile as well as subjectively abusive. 1999 WL 390927 at **3.

In reaching this result, the court is mindful of the statement of the Tenth Circuit in *Anderson, supra*, that the ADA, like Title VII, is neither a "general civility code" nor a statute making actionable the "ordinary tribulations of the workplace."  181 F.3d at 1178. Here, plaintiff may have felt she was being treated poorly or uncivilly by her supervisor, but this alone does not make out a hostile work environment claim under the ADA, even assuming such a claim exists.  While plaintiff's allegations may state "adverse actions" sufficient to survive a summary judgment motion on a claim of substantive discrimination, such actions do not necessarily rise to the level of severe and pervasive conduct creating a hostile work environment.

Defendant's motion suggests that plaintiff's claim for disability harassment is based on a separate set of events, not even cited by plaintiff in her Amended Complaint or Response, but apparently referenced in her deposition testimony (Defendant's Motion at 14-15).  All of these events listed by defendant occurred on or before September 27, 2000, nearly two years before plaintiff filed her charge with the EEOC on August 9, 2002.  Thus, even if plaintiff were relying on these events to support her claim of hostile work environment based on her disability, as opposed to those set forth in her Amended Complaint, her claim would be subject to dismissal due to the fact that they occurred more than 300 days before the filing of her charge.

Accordingly, the Court finds that plaintiff has failed to provide sufficient evidence to support her claim for hostile work environment based on her alleged disability, and to the extent such a claim is alleged in the First Claim for Relief, summary judgment must enter for defendant.

7.      Whether Plaintiff's Claims Under The Colorado Anti-Discrimination Act Are Subject To Summary Judgment

In her Fifth Claim for Relief, plaintiff reasserts all of her claims under Title VII, the ADEA and the ADA as claims under the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402.

Defendant asserts these claims are subject to dismissal or summary judgment as plaintiff never filed a claim with the Colorado Civil Rights Division ("CCRD"), as required by that statute, nor did she receive a notice of right to sue as required by that statute before filing a complaint.  C.R.S. § 24-34-306(14) and (15).

Plaintiff's Amended Complaint alleges that plaintiff did file a charge of discrimination with the CCRD (Amended Complaint at ¶ 6).  However, Plaintiff's Response to Defendant's Motion appears to concede that plaintiff did not file a separate charge with the CCRD (Plaintiff's Response at 8).  Moreover, the two charges of discrimination contained in Exhibit H to Plaintiff's Response indicate that they were filed with the EEOC and not with the CCRD.  Plaintiff's Response provides no explanation of why charges were not filed with the CCRD nor any response to defendant's argument (Plaintiff's Response at 8).

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to all of plaintiff's claims under the Colorado Anti-Discrimination Act.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment (Dkt. # 34) is GRANTED in part and DENIED in part.

As to plaintiff's First Claim for Relief, alleging discrimination in violation of the ADA, the motion is GRANTED to the extent plaintiff alleges a failure to provide reasonable accommodations and to the extent she alleges a hostile work environment based on her disability, and is DENIED to the extent plaintiff alleges that she was discriminated on the basis of disability in the terms, conditions or privileges of employment.

As to plaintiff's Second Claim for Relief, alleging retaliation against plaintiff in violation of Title VII and the ADA, the motion is DENIED.

As to plaintiff's Third Claim for Relief, alleging discrimination in violation of Title VII, the motion is GRANTED and the Third Claim for Relief is dismissed in its entirety.

As to plaintiff's Fourth Claim for Relief, alleging discrimination in violation of the ADEA, the motion is GRANTED and the Fourth Claim for Relief is dismissed in its entirety.

As to plaintiff's Fifth Claim for Relief, the motion is GRANTED and the Fifth Claim for Relief is dismissed in its entirety.

Thus, plaintiff's claims of discrimination on the basis of disability in the terms, conditions or privileges of employment and her claims alleging retaliation in violation of Title VII and the ADA remain in this case.  A **five-day jury trial** is set to commence on **September 26, 2005 at 1:30 p.m.**  A Final Trial Preparation Conference is set for **September 15, 2005 at 8:15 a.m.**  Further pretrial proceedings shall be conducted by the Magistrate Judge consistent with this schedule.

DATED:  June 23, 2005.                    BY THE COURT:

                                          s/ Phillip S. Figa
                                          _____
                                          Phillip S. Figa
                                          United States District Judge